## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JENNIFER BRADEN,** | |
| Plaintiff**,** | **JURY TRIAL DEMANDED** |
| **v.** | |
| **OPTUM RX, INC.,** | **Civ. No.: _____** |
| Registered Agent: | |
| The Corporation Company, Inc. | |
| 112 SW 7th Street, Suite 3C | |
| Topeka, KS 66603 | |
| **-and-** | |
| **OPTUM SERVICES, INC.,** | |
| Registered Agent: | |
| The Corporation Company, Inc. | |
| 112 SW 7th Street, Suite 3C | |
| Topeka, KS 66603 | |
| **-and-** | |
| **AND UNITED HEALTHCARE SERVICES, INC.** | |
| Registered Agent: | |
| The Corporation Company, Inc. | |
| 112 SW 7th Street, Suite 3C | |
| Topeka, KS 66603 | |
| Defendants**.** | |

## COMPLAINT

Plaintiff Jennifer Braden ("Plaintiff" or "Braden") by and through her attorneys, for her cause of action against Defendants Optum RX, Optum Services, Inc., and United Healthcare Services, Inc. (collectively "Defendants" or "UHG") as follows:

## INTRODUCTION

1.      This is an action under the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA") challenging the wrongful employment practices and retaliation directed at Plaintiff Jennifer Braden.

2.      Plaintiff's claims arise out discrimination, disparate treatment, and retaliation Plaintiff suffered as a result of her disability. In violation of the ADA, Plaintiff was given attendance violations ("occurrences") for days she was actually working, Defendants failed to sufficiently back date a requested accommodation so that several occurrences continued to count as attendance violations, and Defendants required Plaintiff to use paid time off ("PTO") with her FMLA leave when Defendants' policy, and its application for other employees, makes such use optional.

3.      Plaintiff's claims also arise out of Defendants' failure to properly calculate the amount of leave she was entitled to under the FMLA. Throughout her employment, Defendants incorrectly calculated Plaintiff's FMLA leave by basing her accrual off of a forty-hour workweek, when the FMLA required Defendants to base her accrual rate off of her weekly average of hours scheduled over the twelve months prior to the beginning of the leave period, which in Plaintiff's case was approximately fifty-five hours. *See* 29 C.F.R. § 825.205(b)-(c) (calculation of weekly leave determined on a workweek basis and where employee averages fifty-five hours each week over the twelve months prior to the beginning of the leave period, employee is entitled to twelve weeks of leave consisting of fifty-five hours each week). Defendants also required Plaintiff to use her FMLA leave hours if she missed such overtime hours. Defendants' failure to credit her for overtime hours worked while at the same time penalizing her for overtime hours missed caused

Plaintiff to prematurely exhaust her twelve workweek allotment of FMLA leave and to inappropriately accrue attendance violations.

4.      Plaintiff's claims also arise out of discrimination, harassment, and retaliation suffered as a result of her disability and associated leave.

5.      Defendants' failures to remedy the issues with her false attendance violations, the forced use of PTO, and the FMLA overtime allocation issue resulted in Plaintiff's premature exhaustion of FMLA leave and unnecessary use of PTO, causing her to accrue attendance violations that otherwise would have been excused, ultimately leading to her termination.

6.      Plaintiff complained about the discrimination, harassment, and disparate treatment she experienced, including the forced use of PTO, the false attendance violations, and the FMLA overtime accrual issues and Defendants retaliated against her by subjecting her to further harassment and ultimately terminating her employment in violation of the FMLA and ADA.

## PARTIES

7.      Plaintiff is a United States citizen, presently residing in Overland Park, Kansas.

8.      During all times relevant to this Demand, Plaintiff was an "employee" within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12111(4), and Plaintiff was an "eligible employee" within the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(4).

9.      Defendants are companies authorized, conduct business, have registered agents, and may be properly served in the State of Kansas. Defendant United Healthcare Services, Inc.'s headquarters is located at Minnetonka, Minnesota. Defendant Optum RX, Inc.'s headquarters is located in Irvine, California. Defendant Optum Services, Inc.'s headquarters is located in Eden Prairie, Minnesota.

10.     At all times relevant to this action, UHG was authorized to conduct business in the State of Kansas and was doing business in the State of Kansas.

11.     At all times relevant to this action, UHG was an "employer" within the meaning of the ADA, 42 U.S.C. 12111(5) and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(4).

12.     Defendants' employees, supervisors, and agents, at all times herein relevant, acted on Defendants' behalf, as Defendants' agent, with actual or apparent authority, and/or Defendants approved, condoned, or ratified their conduct.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1331, because it involves claims that arise under federal statutes, the ADA, 42 U.S.C. 12101 *et seq* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

14.     This Court has personal jurisdiction over Defendants because Defendants maintain minimum contacts within the state of Kansas by operating a business in Overland Park, Kansas, in Johnson County, which lies within the United States District of Kansas.

15.     Under 28 U.S.C. 1391(b), venue is proper in this Court because Defendants own and/or manage a facility in Johnson County, Kansas, which lies within the District of Kansas. Further, venue is proper in this Court because a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district, Plaintiff was employed by Defendants within this judicial district, and Defendants' violations occurred within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16.     On or about March 11, 2019, Plaintiff timely dual filed a Charge of Discrimination with the Kansas Human Rights Commission ("KHRC") and Equal Employment Opportunity

Commission ("EEOC") against Defendants on the basis of disability discrimination and retaliation. *See **Charge of Discrimination***, Ex. A.

17.    On or about June 28, 2019, Plaintiff timely dual filed an amended Charge of Discrimination against Defendants with the KHRC and EEOC. *See **Amended Charge of Discrimination***, Ex. B.

18.    On or about January 21, 2021, the EEOC issued to Plaintiff her Notice of Right to Sue.  Plaintiff received the Notice of Right to Sue on or about January 21, 2021. Plaintiff's Complaint was filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue, which entitles Plaintiff to commence an action regarding her claims. *See **Notice of Right to Sue***, Ex. C.

19.    The aforementioned Charges of Discrimination provided the EEOC and KHRC sufficient opportunity to investigate the full scope of the controversy between the parties. Accordingly, the scope of this Demand may be, and is, as broad as the scope of an EEOC/KHRC investigation that could have been reasonably expected to grow out of the Charge of Discrimination.

20.    Accordingly, Plaintiff has satisfied all private, administrative, and judicial prerequisites to the commencement of this action.

## **GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

21.    The preceding paragraphs are fully incorporated as though fully set forth herein.

22.    Plaintiff began her employment with UHG on or about July 30, 2012, as a Customer Service Representative ("CSR").

23.    Plaintiff was promoted to a Front Pharmacy Clerk in mid-2013 and then became a Pharmacy Technician in mid-2015.

24.     Throughout her tenure as a Pharmacy Technician, Defendants regularly required Pharmacy Technicians to work overtime. As a result of this required overtime, which varied throughout the year, Plaintiff regularly worked approximately fifty-five hours per week.

25.     In computing the leave of Plaintiff, Defendants failed to take into consideration the weekly average number of hours worked by Plaintiff in the twelve months prior to the beginning of her FMLA leave period and instead calculated her FMLA workweek to consist of only forty hours.

26.     Defendants' attendance policy provides for a corrective action process for attendance violations.

27.     Defendants' attendance policy provides that termination of employment "is considered" if the employee has seven or more unplanned absences within a twelve-month period.

28.     During the relevant period of this lawsuit, Plaintiff's supervisors were Ronald Wages and Gretchen Whiteback. Lindsey Taylor replaced Ms. Whiteback in approximately August of 2018.

29.     Plaintiff has suffered from teratoma tumors since 1995.  Plaintiff has had several surgeries to remove the tumors and, as a consequence of the tumors and prior surgeries, regularly experiences debilitating migraines.

30.     Since 2015 UHG has annually approved intermittent leave pursuant to the Family Medical Leave Act ("FMLA") for Plaintiff. Each year, Plaintiff's FMLA request was approved for 10 episodes per month with each episode lasting up to 1 day and for one absence for treatment per six months, with each treatment lasting up to two hours.

31.     In addition to FMLA leave, UHG provided Plaintiff an additional ADA leave accommodation between 2015 and 2017 to cover a gap when she had exhausted her FMLA leave.

Between the FMLA leave and ADA leave, Plaintiff was able to successfully perform the essential requirements of her position.

32.    Plaintiff worked without incident until March of 2018 when her disability forced her to miss all or part of her shifts on March 12, 13, 16, and 18, of 2018, which would typically be FMLA covered absences.  Unbeknownst to her and as a result of UHG's improper calculation of FMLA leave, Plaintiff had already exhausted her intermittent FMLA hours and therefore she received attendance points for these partially or entirely missed shifts.

33.    UHG's policy and practice was to allow other employees to choose whether or not to use PTO for FMLA absences. However, Plaintiff did not have the option of using her PTO for these FMLA absences, because UHG required that she exhaust her PTO before utilizing unpaid FMLA leave. Because of this, she had little or no PTO left when she exhausted her FMLA leave.

34.    On or about April 3, 2018, Plaintiff finally received notice informing her that that her FMLA leave had been exhausted as of March 8, 2018.  This meant that the absences or partial absences listed in Paragraph thirty-two were regarded as unexcused and resulted in occurrences. Although two of the points were eventually removed, Plaintiff ultimately received two points for the period from March 12-18. Additionally, Plaintiff was incorrectly assessed half a point for leaving work early on March 5, 2018, even though she had worked her entire shift that day.

35.    From that point on, Plaintiff began to feel that UHG was making efforts to terminate her employment as she quickly and repeatedly received numerous occurrences for otherwise FMLA/ADA-related absences.

36.    Upon learning that her FMLA leave was exhausted on April 3, 2018, Plaintiff was forced to request an accommodation of up to four days off per month for her disability. This request was approved as of April 24, 2018, but for some reason this leave was only backdated to March

20, 2018, ensuring that several of her March occurrences remained unapproved/unexcused absences.

37.     In approximately June of 2018, Plaintiff discovered that UHG had been incorrectly accruing her FMLA by basing her accrual off of a forty-hour workweek, when the FMLA required UHG to base her accrual rate off of her normal workweek of nearly fifty-five hours.

38.     When Plaintiff complained to UHG about her FMLA leave accrual rate, UHG responded with incorrect and conflicting information. Plaintiff was incorrectly informed by UHG's FMLA administrator that the overtime that she worked was "voluntary" and therefore such time would not affect her FMLA accrual rate. However, UHG also required Plaintiff to use her FMLA leave hours if she missed such "voluntary" overtime hours.

39.     In complete disregard of the law, UHG unlawfully failed to consider the hours that Plaintiff was working each week when calculating the accrual of FMLA leave. Not only did UHG unlawfully credit Plaintiff with working forty hours during weeks in which she actually worked fifty-five hours, but UHG also forced her to use her FMLA leave when missing hours in excess of forty hours. This incorrect calculation of her FMLA leave caused Plaintiff to use up her FMLA leave too quickly and, as a result of not being able to have her absences "excused," to thereby begin accumulating "points" for each shift she missed.

40.     Plaintiff received occurrences that she would not have received had her FMLA leave been properly calculated. Defendants then terminated Plaintiff claiming that her termination was the result of her incurring too many occurrences, a result that could have been avoided had Defendants properly calculated Plaintiff's FMLA leave.

41.     On or about May 2, 2018, Plaintiff was called to her initial Corrective Action Meeting, brought about by her accumulation of eight and a half absence-based points.  However, it was later determined that at least three of these points were erroneously attributed to her.

42.     Plaintiff later received an "elevated" rating, still incorrectly attributing at least three points to her and placing her in a sort of probationary status she would be unable to escape.

43.     In June of 2018, Plaintiff learned that UHG did not require other employees to exhaust PTO before taking unpaid FMLA leave.  Upon learning this, she quickly sent an email to her supervisor, Ron Wages, asking him to clarify the situation, to which he initially responded asking where that information was obtained.  Plaintiff sent him an email, specifying her source, however Mr. Wages refused to comment on this new information.

44.     On or about June 28, 2018, Plaintiff began the process of requesting new accommodations, up to 10 shifts per month of excused leave, which was later granted.

45.     On or about July 2, 2018, Plaintiff sent an email to Manager Gretchen Whiteback, again asking for clarification about the information given to her by Mr. Wages regarding PTO, and complained about an ongoing personnel dispute related to Plaintiff's disability and use of FMLA and ADA leave.

46.     Plaintiff had complained to Mr. Wages on several occasions throughout her employment about discriminatory treatment from two of her coworkers. She suffered repeated questioning by a co-worker, Ms. Paulson, about the circumstances of her FMLA use, including interrogation by Ms. Paulson about whether her use of FMLA was justified.  Further, another employee informed Plaintiff that she had sent Mr. Wages emails from Ms. Paulson in which she complained about Plaintiff's use of her FMLA benefits.

47.     In response to her July 2, 2018 email, Ms. Whiteback indicated that she did not have information regarding Mr. Wages' comments to Plaintiff regarding the use of PTO because he had erased the relevant emails. Plaintiff also sent an email to Mr. Wages that same day, again asking him for clarification about PTO, to which she again received no response.

48.     On or about August 9, 2018, Ms. Braden was given her final Corrective Action Form.

49.     On or about September 18, 2018, Plaintiff was hospitalized due to the stress and anxiety caused by her attempts to use these accommodations and FMLA leave.  Due to the opaque manner by which UHG handled these benefits or entitlements, she was consistently unable to know if her absences were excused and/or paid.  This stress, combined with other issues mentioned previously, caused Plaintiff to miss work and required her to apply for short-term disability for that time.

50.     Plaintiff was again hospitalized for the stress and anxiety between October 19-30, 2018. She applied for short-term disability for this leave, submitting paperwork on November 12, 2018.  However, on November 16, 2018, Mr. Wages told Plaintiff that her paperwork was never received, to which Plaintiff responded by showing him the fax confirmation as well as the receipt confirmation for the email she received.

51.     On or about December 21, 2018, Plaintiff was again told that her paperwork was not received, this time via voicemail.

52.     On January 29, 2019, Defendants terminated Plaintiff, claiming that she exceeded seven unplanned absences within a twelve-month period. In the termination meeting, Defendants asked Plaintiff if certain absences were related to her FMLA condition.  After responding that she

was uncertain and would need to check, she was informed that the information in the system does not show her absences as FMLA related and Mr. Wages asked her for her badge.

53.     Following Plaintiff's termination, UHG challenged Plaintiff's unemployment claim and relied on inaccurate information, including points for days Plaintiff could prove she was at work and points Plaintiff had been told would be removed due to UHG's policy regarding consecutive day absences.

54.     Plaintiff is aware of several individuals who were terminated for non-FMLA/ADA attendance issues who were permitted to claim unemployment without any resistance from UHG.

### COUNT I
### Violation under 42 U.S.C. 12101 *et seq.* - Disability

55.     The above paragraphs are incorporated as though fully set forth herein.

56.     At all relevant times herein, Plaintiff was qualified for her position of employment with Defendants and performed the duties and responsibilities of her job satisfactorily.

57.     Plaintiff suffers from teratoma tumors and, as a result, regularly experiences debilitating migraines. Plaintiff's medical conditions substantially limit one or more major life activities, and/or she is regarded as having such a disability.

58.      With reasonable accommodations, Plaintiff's medical conditions did not interfere with her ability to perform up to the standards of Defendants.

59.     Plaintiff's  impairments are disabilities and/or Defendants  regarded  Plaintiff's condition as a disability under the ADA, 42 U.S.C. 12101 *et seq.*

60.     By virtue of her disability and/or perceived disability, Plaintiff is a member of a class of persons protected by the ADA, 42 U.S.C. §12101 *et seq.*

61.     Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her disability, in violation of the ADA, 42 U.S.C. §12101 *et seq.* as amended.

62.     Defendants subjected Plaintiff to disparate treatment because of her disability by giving her occurrences for days she was actually at work, failing to sufficiently back date her accommodation to reduce the number of disability-related occurrences, and requiring that she use PTO with her FMLA leave when Defendants' policy makes such use optional.

63.     Defendants further subjected Plaintiff to disparate treatment because of her disability by subjecting Plaintiff to unwelcome harassment, refusing to investigate and respond to Plaintiff's repeated complaints about harassment, and terminating Plaintiff's employment with Defendants.

64.     Defendants knew or should have known of the harassment and disparate treatment and failed to take appropriate action to prevent such discrimination.

65.     Defendants subjected Plaintiff to discrimination that affected a term, condition, and/or privilege of her employment.

66.     Defendants intentionally and unlawfully discriminated against Plaintiff on the basis of her disability, with Plaintiff's disability being a motivating factor in Defendants' decision to terminate Plaintiff's employment.

67.     As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits associated with Plaintiff's employment with Defendants.

68.     As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered humiliations, a loss of self-esteem, emotional distress and mental anguish, and other related compensatory damages.

69.     Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including discrimination based on disability status.

70.     Defendants failed to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADA.

71.     By failing to take prompt and effective remedial action, in effect, Defendants condoned, ratified, and/or authorized the discrimination against Plaintiff.

72.     Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter Defendants from like conduct in the future.

73.     Plaintiff is entitled to recover from Defendants reasonable attorneys' fees and court costs.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in her favor and against Defendants for such damages, actual, nominal, and punitive as are fair and reasonable, for her reasonable attorney's fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT II

### Violation under 42 U.S.C. 12101 *et seq.* - Retaliation

74.     The above paragraphs are incorporated as though fully set forth herein.

75.     Plaintiff is a member of a class of persons protected by the ADA, 42 U.S.C. §12101 *et seq.* by virtue of her status as a person with a disability or perceived disability.

76.     At all relevant times herein, Plaintiff was qualified for her position of employment with Defendants and performed the duties and responsibilities of her job satisfactorily.

77.     While Plaintiff was working for Defendants, she participated in the statutorily protected activity of requesting and utilizing accommodations based on her disability, and by opposing discriminatory practices by complaining to Defendants about discrimination, harassment, and disparate treatment based on her membership in a protected class. Therefore, Plaintiff was a covered individual.

78.     Defendants became aware of Plaintiff's opposition to the unlawful discrimination when Plaintiff complained to management both orally and in writing. Defendants were also aware of Plaintiff's request for and use of accommodations for Plaintiff's disability. As such, Defendants were aware of Plaintiff's protected activity and opposition to illegal practices.

79.     After Plaintiff engaged in such statutorily protected activity, Defendants retaliated against her for exercising her protected rights by terminating Plaintiff's employment and later challenging her unemployment claim when UHG did not challenge the unemployment claims of other non-disabled individuals terminated for attendance.

80.     As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits associated with Plaintiff's employment with Defendants.

81.     As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered humiliation, a loss of self-esteem, emotional distress and mental anguish, and other related damages.

82. Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination and retaliation against its employees, including retaliation based on her complaints of discrimination.

83. Defendants failed to properly train and/or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADA.

84. By failing to take prompt and effective remedial action, Defendants effectively condoned, ratified, and/or authorized the discrimination, harassment, and retaliation against Plaintiff.

85. Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter Defendants from like conduct in the future.

86. Plaintiff is entitled to recover from Defendants reasonable attorney's fees and court costs.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in her favor and against Defendants for such damages, actual, nominal, and punitive as are fair and reasonable, for her reasonable attorney's fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

### COUNT III
### 29 U.S.C. § 2601, *et seq.* - Violation of the Family and Medical Leave Act of 1993

87. The above paragraphs are incorporated as though fully set forth herein.

88. At all relevant times, Plaintiff was employed for at least twelve months by UHG, the employer to whom leave was requested, and was employed for at least 1,250 hours of service with UHG during the twelve-month period immediately preceding her requested leave, and was

therefore an "eligible employee" as that term is defined under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2611(2).

89.     At least fifty employees were employed within seventy-five miles of UHG's worksite where Plaintiff worked.

90.     At all relevant times, UHG was engaged in commerce or in any industry or activity affecting commerce, and employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year, and was therefore an "employer" as that term is defined by the FMLA, 29 U.S.C. § 2611(4)(A)(i).

91.     Plaintiff was an eligible employee for FMLA leave; Defendants were employers under the FMLA; Plaintiff was entitled to leave under the FMLA; Plaintiff provided sufficient notice to Defendants of her intent to take FMLA leave and did take leave pursuant to 29 U.S.C. § 2601, et seq., and 29 U.S.C. § 2612(a) and 29 C.F.R. §825.113 and/or 825.115.

92.     The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of any right provided by the FMLA.

93.     Throughout her employment, Defendants incorrectly calculated Plaintiff's FMLA leave by basing her accrual off of a forty-hour workweek, when the FMLA required Defendants to base her accrual rate off of her weekly average of hours scheduled over the twelve months prior to the beginning of the leave period, which in Plaintiff's case was approximately fifty-five hours. *See* 29 C.F.R. § 825.205(b)-(c) (calculation of weekly leave determined on a workweek basis and where employee averages fifty hours each week, employee is entitled to twelve weeks of leave consisting of fifty-five hours). Defendants also required Plaintiff to use her FMLA leave hours if she missed overtime hours. Defendants' failure to credit her for overtime hours worked while at

the same time penalizing her for overtime hours missed caused Plaintiff to prematurely exceed her twelve workweek allotment of FMLA leave and to inappropriately accrue attendance violations.

94.     Defendants wrongfully and illegally interfered with Plaintiff's federally protected rights under the FMLA, including her right to leave under the FMLA.

95.     Defendants discriminated against Plaintiff and fired her for exercising her rights under the Family Medical Leave Act.

96.     An eligible employee who takes FMLA leave is protected from harassing or discriminatory treatment.

97.     Defendants lacked good faith in their interference with Plaintiff's rights under the FMLA and in their treatment of Plaintiff for exercising her rights under the FMLA.

98.     Plaintiff's termination under the circumstances set out herein was prohibited by the FMLA.

99.     Defendants' actions against and treatment of Plaintiff were those which a reasonable employee would have found materially adverse.

100.    As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

101.    The actions of Defendants, including their agents and/or employees, in interfering with Plaintiff's FMLA and termination of Plaintiff's employment constitute a willful violation of the FMLA.

102.    Plaintiff is entitled to recover from Defendants her reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for such damages, including liquidated damages, which will fully and fairly compensate her for her injuries and damages, for her reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

### COUNT IV
### 29 U.S.C. § 2601, *et seq.* - Retaliation

103.    The above paragraphs are incorporated as though fully set forth herein.

104.    At all relevant times, Plaintiff was employed for at least twelve months by UHG, the employer to whom leave was requested, and was employed for at least 1,250 hours of service with UHG during the twelve-month period immediately preceding her requested leave, and was therefore an "eligible employee" as that term is defined under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2611(2).

105.    At least fifty employees were employed within seventy miles of UHG's worksite where Plaintiff worked.

106.    At all relevant times, UHG was engaged in commerce or in any industry or activity affecting commerce, and employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year, and was therefore an "employer" as that term is defined by the FMLA, 29 U.S.C. § 2611(4)(A)(i).

107.    Plaintiff was an eligible employee for FMLA leave; Defendants were employers under the FMLA; Plaintiff was entitled to leave under the FMLA; Plaintiff provided sufficient notice to Defendants of her intent to take FMLA leave and did take leave pursuant to 29 U.S.C. § 2601, et seq., and 29 U.S.C. § 2612(a) and 29 C.F.R. §825.113 and/or 825.115.

108.     The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of any right provided by the FMLA.

109.     Throughout her employment, Defendants incorrectly calculated Plaintiff's FMLA leave by basing her accrual off of a forty-hour workweek, when the FMLA required Defendants to base her accrual rate off of her weekly average of hours scheduled over the twelve months prior to the beginning of the leave period, which in Plaintiff's case was approximately fifty-five hours. *See* 29 C.F.R. § 825.205(b)-(c) (calculation of weekly leave determined on a workweek basis and where employee averages fifty-five hours each week over the twelve months prior to the beginning of the leave period, employee is entitled to twelve weeks of leave consisting of fifty-five hours). Defendants also required Plaintiff to use her FMLA leave hours if she missed overtime hours. Defendants' failure to credit her for overtime hours worked while at the same time penalizing her for overtime hours missed caused Plaintiff to prematurely exceed her twelve workweek allotment of FMLA leave and to inappropriately accrue attendance violations.

110.     Defendants wrongfully and illegally interfered with Plaintiff's federally protected rights under the FMLA, including her right to leave under the FMLA.

111.     An eligible employee who takes FMLA leave is protected from retaliation or other harassing or discriminatory treatment.

112.     Plaintiff complained to Defendants about their violations of the FMLA, specifically questioning how many hours they included in a "workweek" for purposes of the FMLA. In response, she received inaccurate and evasive information. She was ultimately harassed and eventually terminated because of her complaints.

113.     Defendants retaliated against Plaintiff as a result of her complaints about their violations of the FMLA.

114.     Defendants lacked good faith in their treatment of Plaintiff for exercising her rights under the FMLA and for making complaints regarding their calculation of the "workweek" for purposes of the FMLA.

115.     Plaintiff's termination under the circumstances set out herein was prohibited by the FMLA.

116.     Defendants' actions against and treatment of Plaintiff were those which a reasonable employee would have found materially adverse.

117.     As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

118.     Defendants' retaliatory termination of Plaintiff's employment constitutes a willful violation of the FMLA.

119.     Plaintiff is entitled to recover from Defendants her reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for such damages, including liquidated damages, which will fully and fairly compensate her for her injuries and damages, for her reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the United States District Court for the District of Kansas at Kansas City, Kansas as her place of trial.

Dated: January 28, 2021

Respectfully submitted,

/s/ Kathryn Rickley
Kathryn S. Rickley, KS # 23211
/s/ Matthew Osman
Matthew E. Osman, KS # 23563
OSMAN & SMAY LLP
7111 W. 151st St., #316
Overland Park, Kansas 66223
1-913-667-9243 (Phone)
1-866-470-9243 (Fax)
krickley@workerwagerights.com
mosman@workerwagerights.com

**ATTORNEYS FOR PLAINTIFF**