In the United States District Court
for the District of Kansas

————————

Case No. 21-cv-02046-TC-GEB

————————

Jᴇɴɴɪꜰᴇʀ Bʀᴀᴅᴇɴ,

*Plaintiff*

v.

Oᴘᴛᴜᴍ RX, Iɴᴄ., ᴇᴛ ᴀʟ.,

*Defendants*

————————

## MEMORANDUM AND ORDER

Plaintiff Jennifer Braden filed this action against her former employer, alleging wrongful employment practices and retaliation in violation of federal law. Defendants moved to compel arbitration and dismiss the complaint, Doc. 10, based on an arbitration agreement that Braden signed as a condition of employment. Defendants also requested oral argument, Doc. 12, on the motion. Because oral argument is unnecessary, that request is denied. For the following reasons, Defendants' Motion to Compel Arbitration is granted, but the Motion to Dismiss the Complaint is denied. Instead, this suit is stayed pending arbitration.

## I

## A

The Federal Arbitration Act, 9 U.S.C §§ 1–16, codifies "a liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). It requires courts to enforce agreements to arbitrate according to their terms. *Id.* For motions to compel arbitration, federal courts apply a summary-judgment-like standard: the moving party bears the burden of showing there is no genuine issue of material fact about whether the parties agreed to

arbitrate their grievances. *Hancock v. AT&T*, 701 F.3d 1248, 1261 (10th Cir. 2012). To determine whether a genuine issue of fact exists, the Court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *Cf. Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997) (summary judgment). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671–72, 674 (10th Cir. 1998), or unsupported by the record as a whole, *Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The party seeking to compel arbitration bears the burden of presenting evidence that the parties entered an agreement to arbitrate. The relevant facts are those that pertain to contract formation, and generally, courts "should apply ordinary state-law principles that govern the formation of contracts." *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

### B

Jennifer Braden has a medical condition that requires frequent leave from work. According to her former employer UnitedHealth Group,[1] Braden exhausted her allotted leave time, causing her to accumulate unexcused absences. These absences led to her termination. Braden disputes UnitedHealth's calculation of her absences and allotted leave time.

Since 1995, Braden has suffered from teratoma tumors and undergone several surgeries to remove them. As a result, she regularly experiences severe migraines. Doc. 1 at ¶ 29. From July 2012 to January 2019, Braden worked for UnitedHealth. She began as a customer service representative and later advanced to a pharmacy technician. *Id.* at ¶¶ 22–23. During that time, because of her condition, she required frequent medical leave from work. *See id.* at ¶¶ 30–32. UnitedHealth

---

[1] Braden has sued Optum RX, Inc.; Optum Services, Inc.; and United HealthCare Services, Inc. All are subsidiaries of UnitedHealth Group. The arbitration agreement refers to UnitedHealth Group, and the parties refer to Defendants collectively as "UHG." For simplicity, this order later refers to Defendants or "UnitedHealth."

provided this leave under the Family Medical Leave Act (FMLA) and under the Americans with Disabilities Act (ADA). *Id.* at ¶¶ 30–31.

This leave arrangement worked fine until March 2018, when Braden's disability caused her to miss several shifts. Doc. 1 at ¶ 32. UnitedHealth counted these as unexcused absences because, according to its records, Braden had already exhausted her FMLA leave. *Id.* Over the following months, Braden complained about the status of her absences and unsuccessfully challenged UnitedHealth's calculation of her leave accrual. The stress of the situation caused Braden to miss even more time. *Id.* at ¶ 40. Ultimately, UnitedHealth terminated Braden for accumulating too many unexcused absences. *Id.* at ¶¶ 49–50, 52.

UnitedHealth claims that Braden entered an arbitration agreement as a condition of her employment. Doc. 11 at 6. Immediately before her hire, Braden received an offer letter along with an arbitration agreement. *Id.* at 4; Doc. 11-1 at 15–26. The agreement was a standalone policy that employees had to acknowledge and sign. Doc. 11 at 4. It stated that "continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy." Doc. 11-1 at 4, 8. Braden electronically signed the agreement on July 31, 2012. *Id.* at 4, 13. And she continued her employment for more than six years. Doc. 1 at ¶¶ 22–23. Braden does not dispute that she signed the agreement, nor does she dispute that her continued employment constituted acceptance of the policy. *See* Doc. 17 at 1–2.

The policy covers most employment-related disputes, including those arising out of FMLA and ADA claims. Doc. 11-1 at 19–20. Additionally, the policy contains a clause incorporating the American Arbitration Association (AAA) Employment Dispute Resolution Rules, unless otherwise superseded by the policy. *Id.* at 20–21. The AAA Rules, in turn, contain a provision that assigns to an arbitrator the authority to determine arbitrability issues—including the existence, scope, and validity of the arbitration agreement. Doc. 11-2 at 18. (The incorporation clause and the AAA Rule assigning arbitrability issues to arbitration are together referred to as the "delegation provision.") The policy also contains an amendment clause, reserving to UnitedHealth "the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days notice" by posting on the company's intranet website. Doc. 11-1 at 25.

## C

Braden sued Defendants for wrongful employment practices and retaliation in violation of federal law. Defendants moved to compel arbitration. The FAA governs this dispute.

**1.** Arbitration is a matter of contract. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Section 2 of the FAA states that a "written provision in . . . a contract . . . to settle by arbitration a controversy arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, arbitrators derive authority to resolve disputes only from the parties' advance agreement to submit their grievances to arbitration. *AT&T*, 475 U.S. at 648–49. Often, those grievances spawn preliminary disputes over the validity and scope of the arbitration agreement itself (*i.e.*, issues of "arbitrability"). For disputes over the scope of a valid arbitration agreement, the presumption is in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Arbitrability disputes often raise yet another threshold question: *who* should resolve them? By default, courts should. *AT&T*, 475 U.S. at 649; *Riley v. Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). The law treats silence or ambiguity about "who should decide arbitrability" differently from the way it treats silence or ambiguity about "whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement." *First Options*, 514 U.S. at 944–45. This is because "doing so might . . . force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *Riley*, 157 F.3d at 779–80 (quoting *First Options*, 514 U.S. at 945). Still, parties may expressly agree to delegate arbitrability questions to an arbitrator. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement . . . and the FAA operates on this additional arbitration agreement just as it does on any other."). They must do so with "clear and unmistakable evidence" of their intent. *First Options*, 514 U.S. at 944. Finally, if a court is the "who" that gets to decide, it "has no business weighing the merits" of the underlying grievance when determining whether the parties agreed to submit that grievance to arbitration. *AT&T*, 475 U.S. at 649–50.

**2.** Defendants argue that Braden agreed to arbitrate her employment claims. They also claim that any threshold arbitrability questions must be decided by an arbitrator in light of the policy's delegation provision. According to Defendants, this includes questions of scope and validity.

Braden challenges the policy's enforceability as well as who should decide that challenge. First, Braden argues that there was no valid arbitration agreement because the policy's one-sided amendment clause rendered it illusory. This clause, Braden argues, means that the agreement lacks "bilateral consideration," which "prevented the parties from reaching a mutual assent or meeting of the minds" on all essential terms. Doc. 17 at 4. Braden also argues that policy is unconscionable due to that same amendment clause and "extremely restrictive" limits on discovery that deny employees "a fair opportunity to present" claims. *Id.* at 13.

As for *who* decides the arbitrability issues, Braden further argues that the Court must decide them because the agreement itself does not contain a delegation provision. She claims that the incorporation of the AAA Rules was not clear and unmistakable evidence of intent to delegate, and that therefore the Court must determine arbitrability issues like validity, enforceability, and scope. And even if there was a clear and unmistakable delegation provision, Braden argues that it is unenforceable because it is illusory "for the same reason that the whole agreement is illusory." Doc. 17 at 9.

## II

Defendants' Motion to Compel Arbitration is granted. The parties entered an arbitration agreement, and that agreement contains a delegation provision that refers to arbitration all disputes over scope and enforceability. This suit is stayed pending the arbitration.

### A

As a preliminary matter, Braden's "illusory" challenge is distinct from her "unconscionability" challenge in an important way. Whether an agreement is illusory is a challenge to the *formation* of that agreement. Formation focuses on issues that go "to the making" of the agreement to arbitrate and whether an arbitration clause "was ever concluded." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2005). It is distinct from arbitrability issues like scope, validity, and

enforceability. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 n.2 (2010). On the other hand, unconscionability (as asserted by Braden) concerns the *enforceability* of the agreement. And the enforceability of a written agreement to arbitrate (*i.e.*, whether it is legally binding, as opposed to whether it was in fact agreed to) is governed by Section 2 of the FAA. *Rent-A-Center*, 561 U.S. at 70 n.1; *see infra* Part II.B.

When deciding whether parties agreed to arbitrate, courts generally apply state-law principles for contract formation. *Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC*, 12 F.4th 1212, 1220 (10th Cir. 2021) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In Kansas, a binding contract requires a "meeting of the minds on all essential elements." *Unified Sch. Dist. No. 446, Indep., Kan. v. Sandoval*, 286 P.3d 542, 546 (Kan. 2012). For arbitration agreements, one party's "unfettered" right to amend the agreement precludes any meeting of the minds and makes the agreement illusory. *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002). But if the right to amend is sufficiently limited, the agreement remains binding. *See Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 478 (10th Cir. 2006); *see also All. Platforms, Inc. v. Behrens*, 305 P.3d 30, 33 (Kan. Ct. App. 2013) ("A reviewing court must respect that the parties contractually agreed to be bound by an arbitrator's decision.")

The parties' arbitration agreement is not illusory because there was bilateral consideration and UnitedHealth did not retain an "unfettered" right to modify the agreement. By its terms, the arbitration agreement is binding on both parties and governs their claims against each other. *See Williams-Jackson v. Innovative Senior Care Home Health of Edmond, LLC*, 727 F. App'x. 965, 967, 969 (10th Cir. 2018) (referring to exchange of promises in contractual language). Braden does not dispute that she signed the arbitration agreement with UnitedHealth. The agreement expressly states that the policy "is a binding contract between UnitedHealth Group and its employees." Doc. 11-1 at 19. It states in bold lettering at the top, "Acceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy." *Id.* Three sentences later, the policy reiterates that the parties—both employee and employer—agree "*to be bound* by the Policy." *Id.* (emphasis added). Similar language was sufficient in *Williams-Jackson. See* 727 F. App'x. at 967.

Moreover, UnitedHealth's right to amend the policy is not "unfettered" and thus does not make the agreement illusory. Like in *Hardin*, the amendment clause contains a notice requirement: 30 days here

versus 10 there. 465 F.3d at 478; *see also Smith v. Curo Health Servs., LLC*, No. 20-4073, 2021 WL 860944, at *2 (D. Kan. Mar. 8, 2021) (following *Hardin*).

The amendment clause also contains a restriction on the effective date of any changes, which together with the notice requirement meaningfully limits UnitedHealth's ability to modify the policy at any time. Properly noticed changes will only take effect on January 1 of the following year. In holding that the agreements in *Hardin* and *Williams-Jackson* were not illusory, the Tenth Circuit noted that the amending party could not amend or terminate the agreement if it had notice of existing or potential claims. Braden points out that her agreement does not contain a similar express limitation and would allow UnitedHealth to amend the policy after terminating Braden but before she brought an arbitration claim. Doc. 17 at 4. But the notice and effective-date limitations prevent UnitedHealth from amending the policy immediately at any time. Together, they meaningfully restrict UnitedHealth from simply "cut[ting] off existing claims." *See Williams-Jackson*, 727 F. App'x at 969. And unlike in *Dumais*, UnitedHealth does not have "free reign to renege" on its promise to be bound by the agreement. 299 F.3d at 1218.

Braden's reliance on another district court's contrary conclusion is inapposite. Doc. 17 at 4 (citing *Keanini v. United Healthcare Servs.*, 33 F. Supp. 3d 1191, 1194 (D. Haw. July 21, 2014)). For one thing, federal district court decisions do not bind other federal district courts, whether within the District of Kansas or without. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d] (3d ed. 2011)). More importantly, different substantive state law explains the different results. *Keanini* relied on a distinguishable Hawaii Supreme Court case, *Douglass v. Pflueger Hawaii, Inc.*, 135 P.3d 129 (Haw. 2006). The *Douglass* court held that there was no valid arbitration agreement, in part, because "without mutuality of obligation" there is no bilateral consideration.[2] 135 P.3d at 144. But under Kansas substantive law, mutuality of obligation is not required for contracts as long as both parties retain some valid consideration for their

---

[2] The facts of *Douglass* were also distinct. Despite using the same language, the arbitration policy was included in an employee handbook. The employee signed a separate form, acknowledging receipt of the handbook, that stated: "The Company has the right to change this handbook at any time and without advance notice." *Douglass*, 135 P.3d at 144.

promises. *Flight Concepts Ltd. P'ship v. Boeing Co.*, 819 F. Supp. 1535, 1553 (D. Kan. 1993) (citing 17A Am. Jur. 2d *Contracts* § 18 (1991)). Braden and Defendants each promised to submit their grievances to arbitration, and each accepted the other's intent to be bound by that promise. Although there may not have been perfect mutuality of obligation due to the amendment clause favoring Defendants, each party retained valid consideration. *See id.* (citing *In re Estate of Goff*, 379 P.2d 225, 236 (Kan. 1963)) ("Mutual promises and the acceptance of benefits, however small, constitute valid consideration."). And finally, although the Tenth Circuit's *Hardin* decision applied Oklahoma law, its reasoning has been followed in arbitration cases under Kansas law. *See, e.g.*, *Biglow v. Dell Techs., Inc.*, No. 20-2563, 2021 WL 1784559 (D. Kan. May 5, 2021); *Smith v. Curo Health Servs., LLC*, No. 20-4073, 2021 WL 860944 (D. Kan. Mar. 8, 2021).

### B

Having concluded that the parties entered an arbitration agreement, the next question involves issues of arbitrability like scope and enforceability. Ordinarily, a court would decide this question before compelling arbitration. But parties may agree to delegate issues of arbitrability to an arbitrator, as long as they do so by "clear and unmistakable evidence." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The parties did so here, and the delegation provision covers Braden's claims that the arbitration agreement is unconscionable. Finally, Braden's challenge to the delegation provision itself also fails.

**1.** The Tenth Circuit has held that express incorporation of the AAA Rules is sufficient for "clear and unmistakable evidence" of an agreement to arbitrate the validity and scope of an arbitration agreement. *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1245 (10th Cir. 2018). The AAA rules include a provision that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Doc. 11-2 at 18.

Braden and UnitedHealth's agreement incorporates the AAA Rules:

> The rules and procedures to be used by the parties are generally based on the Employment Dispute Resolution Rules of the American Arbitration Association ("AAA Rules"). UnitedHealth Group has modified the rules and

procedures in certain respects. … [P]rovisions permitting limited discovery have been added to ensure that both parties have similar access to relevant information. The AAA Rules shall govern issues not specifically addressed by this Policy.

Doc. 11-1 at 20–21. Binding precedent has held that similar language constitutes clear and unmistakable evidence of delegation of arbitrability. *See Dish Network*, 900 F.3d at 1242. In *Dish Network*, the arbitration agreement provided that "[a] single arbitrator engaged in the practice of law from the American Arbitration Association ("AAA") shall conduct the arbitration under the then current procedures of the AAA's National Rules for the Resolution of Employment Disputes." *Id.*; *see also Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281–84 (10th Cir. 2017).

Against this language, Braden argues that the scope of arbitrable issues is limited to those listed in the agreement's "Scope" section, which does not address arbitrability. Doc. 17 at 6–7. She points to the provision that "[t]he AAA Rules shall govern issues not specifically addressed by this Policy" and argues that scope *was* specifically addressed and did *not* include arbitrability. For support, she cites the agreement's separate sections for "Scope" and "Rules and Procedures." *Id.* But those differences do not matter: courts have enforced delegation clauses in agreements with separate scope and procedures sections. *E.g.*, *Rent-A-Center*, 561 U.S. at 68 (noting agreement had separate sections for "Claims Covered By The Agreement" and "Arbitration Procedures," with the latter delegating arbitrability questions).

Furthermore, the delegation provision covers Braden's objection that the arbitration agreement as a whole is unconscionable due to its strict limits on discovery and the amendment clause.[3] This unconscionability argument is a question of arbitrability, which the delegation provision refers to an arbitrator. *See Rent-A-Center*, 561 U.S. at 73–74; *see also Weishaar v. Wells Fargo Bank, N.A.*, No. 18-2188, 2018 WL 4189696, at *3 (D. Kan. Aug. 31, 2018) ("While such 'threshold' issues of arbitrability—including whether the agreement covers a particular controversy or whether the agreement is *unconscionable*—are generally decided

---

[3] Braden does challenge the validity of the delegation provision, but those issues are addressed below. *See infra* Part II.B.2.

by the court, when faced with a valid delegation provision these issues are resolved by an arbitrator." (emphasis added)).

**2.** Braden argues that even if the delegation provision permissibly delegates authority to decide arbitrability issues, the provision itself is unenforceable because it is illusory. Doc. 17 at 9–10. But her argument fails because it challenges the agreement as a whole, rather than the delegation provision specifically.

There are two types of validity challenges under Section 2 of the FAA. *Rent-A-Center*, 561 U.S. at 70. One challenges specifically the validity of the agreement to arbitrate. *Id.* The other challenges the contract in which that agreement is found, either on a ground that directly affects the whole contract (*e.g.*, the contract was fraudulently induced) or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. *Id.* (quoting *Buckeye Check Cashing*, 546 U.S. at 444). Only the first type is relevant to whether an arbitration agreement is enforceable. *Id.* This distinction characterizes the "rule of severability" established by Section 2. *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105 (10th Cir. 2020). In other words, to challenge the enforceability of an agreement to arbitrate found within a contract, a party must specifically challenge the arbitration provision. Challenges to other provisions of the contract or to the contract as a whole do not prevent a court from enforcing the agreement to arbitrate. *Rent-A-Center*, 561 U.S. at 70; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967).

This same severability principle applies to delegation provisions contained within standalone arbitration agreements. *Rent-A-Center*, 561 U.S. at 71–72. So to attack a delegation provision, a party must specifically challenge that provision and not just the validity or enforceability of the arbitration agreement as a whole. *Id.* To help illustrate the distinction: It is possible for a *valid* delegation provision to be contained within an *invalid* arbitration agreement, just as it is possible for an invalid delegation provision to be found in a valid arbitration agreement. *See Buckeye Check Cashing*, 546 U.S. at 448 (2006).

Here, Braden does not specifically challenge the delegation provision, as required by *Rent-A-Center*. Indeed, she expressly states that her challenge is for "the same reason the entire arbitration agreement is illusory"—the amendment clause. Doc. 17 at 9. She argues that another provision in the agreement (the amendment clause) makes the whole agreement illusory and unenforceable and therefore too the

delegation provision contained within. *Id.* ("Defendant's retention of the right to amend the Arbitration Agreement *extends* to the incorporation of the AAA Rules[.]" (emphasis added)). But *Rent-A-Center* precludes this whole-to-part chain of reasoning. Finally, even if Braden's argument constitutes a specific challenge to the delegation provision, that provision is not illusory because the amendment clause does not give Defendants an "unfettered" right to modify. *See supra* Part II.A.

## C

Section 3 of the FAA provides: "[i]f any suit … be brought … upon any issues referable to arbitration under an agreement[,] the court … *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). As a result, these proceedings are stayed pending arbitration.

Instead of a stay, Defendants argue dismissal is the appropriate remedy where *all* issues must be submitted to arbitration. Doc. 11 at 14 (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). But the plain language of Section 3 favors a stay over dismissal. Several other circuits agree. *See, e.g.*, *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005); *Lloyd v. Hovensa, L.L.C.*, 369 F.3d 263, 269 (3d Cir. 2004); *Aceros Prefabricados, S.A. v. Tradearbed, Inc.*, 268 F.3d 91, 95 n.2 (2d Cir. 2002). Although it appears that the Tenth Circuit has not directly addressed the issue, a stay is the prudent option in light of the statute's plain language.

## III

For the reasons set forth above, Defendants' Motion to Compel Arbitration is GRANTED and the Motion to Dismiss the Complaint is DENIED. This suit is stayed pending the outcome of the arbitration proceedings.

It is so ordered.

Date:  November 15, 2021          s/ Toby Crouse
                                  Toby Crouse
                                  United States District Judge